**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JORGE VALDES,

                          Plaintiff,

    v.                                                     No. 08-CV-749
                                                                 (LEK/DRH)

BRIAN FISCHER, Commissioner,
N.Y.S.D.O.C.S.; MARY D'SILVA; C.
LINQUIST; WILLIAM D. BROWN; DR.
MAGRAW; MS. PARRINO; and A.
JACOBSON, D.D.S.,

                          Defendants.

---

**APPEARANCES:**                               **OF COUNSEL:**

JORGE VALDES
Plaintiff Pro Se
92-A-5336
Eastern Correctional Facility
Post Office Box 338
Napanoch, New York 12458

HON. ANDREW M. CUOMO                 SUSAN C. von REUSNER, ESQ.
Attorney General for the                   DEAN J. HIGGINS, ESQ.
   State of New York                          Assistant Attorneys General
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Jorge Valdes ("Valdes"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, a DOCS commissioner and six DOCS employees, violated

---

      [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

his constitutional rights under the Eighth Amendment.  Am. Compl. (Dkt. No. 47).  Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. No. 59.  Valdes opposes the motion.  Dkt. No. 60.  For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The facts are related herein in the light most favorable to Valdes as the non-moving party.  See subsection II(A) infra.

### A. Dental Treatment

On January 22, 1998, while incarcerated at Auburn Correctional Facility ("Auburn"), Valdes had a tooth extracted from the upper left quadrant of his mouth.  McGraw Aff. (Dkt. No. 59-4) ¶ 10; Dkt. No. 59-5 at 5; Valdes Dep. (Dkt. No. 59-17) at 20, 36-37.  Sometime in 2000, an unidentified dentist informed Valdes that he had a broken molar embedded in his gums in the upper left portion of his mouth.  McGraw Aff. ¶ 30; Valdes Dep. at 23, 38-48.  However, dental records indicate that from January 22, 1998 until January 23, 2001, Valdes was seen in the Auburn dental clinic four times by two dentists and a dental hygienist, "none of whom recorded any evidence of a complaint of pain or a broken molar fragment in or around the . . . upper left quadrant . . . ."  McGraw Aff. ¶ 31.

On May 31, 2001, Valdes was examined by Dr. Justino at Auburn who told Valdes that he had "an impacted root tip in the lower right quadrant of his mouth . . . ."  McGraw Aff. ¶¶ 15, 32; see also Dkt. No. 59-5 at 5.  X-rays confirmed Dr. Justino's diagnosis.  McGraw Aff.

2

¶ 15.  Valdes disagreed with this diagnosis.  Valdes Dep. at 44-45.  On July 13, 2001, Valdes was seen at the dental clinic at Shawangunk Correctional Facility ("Shawangunk") where Valdes "complained of a 'bone under the gum' in the upper right part of his mouth . . . ."  McGraw Aff. ¶ 33; see also Dkt. No. 59-5 at 7.  Valdes was examined by Dr. Russ who ordered an x-ray which showed "'no evidence of any bone or root tip' [in the upper right quadrant] . . . but which confirmed the presence of an impacted root tip at the lower right molar . . . . "  McGraw Aff. ¶ 33; see also Dkt. No. 59-5 at 7.  Valdes nevertheless insisted that the problem was on the upper right side of his mouth.   McGraw Aff. ¶ 33; see also Dkt. No. 59-5 at 7.  Valdes returned to the clinic on February 4, 2002, complaining to Dr. Russ about the same type of pain radiating from the upper right side of his mouth.  McGraw Aff. ¶ 34, Dkt. No. 59-5 at 7.  Examination again found no evidence of a problem on the upper right side, but on the lower right side.  McGraw Aff. ¶ 34; Dkt. No. 59-5 at 7.

Valdes was then transferred to Eastern Correctional Facility ("Eastern"), and seen by Dr. Shah on January 31, 2005, when he again complained of a root under his upper right gum.  McGraw Aff. ¶ 35; Dkt. No. 59-5 at 7; Valdes Dep. at 17-18.  Dr. Shah recorded the complaints but "noted no broken root tip, molar or tooth fragment . . . only . . . a lost filling and the presence of cavities [in] the neighboring teeth . . . ."  McGraw Aff. ¶ 35.  After x-rays were taken, Valdes saw Dr. Shah and defendant Parrino[2] engaged in a conversation in

---

[2] Defendant Parrino worked at Eastern as a dental assistant "providing general, non-medical support to the treating dentists . . ., manag[ing] the patient intake on a daily basis, maintain[ing] inmate dental records, schedul[ing] inmate appointments . . . and steriliz[ing] dental instruments."  Parrino Aff. (Dkt. No. 59-11) ¶ 2.  In that capacity, Parrino "d[id] not provide dental care to inmates," including, for her own health reasons, taking x-rays of patients for the dentists.  Parrino Aff. ¶¶ 3-4, 9.  Parrino's duties did not include involvement in "determining the dental care to be provided to [inmates] . . . as [t]he licensed dentists . . . have the sole responsibility for deciding an inmate's dental care

3

which Parrino indicated that Valdes had no valid complaints.  Valdes Dep. at 22-23.

Between January 31, 2005 and March 13, 2007, Valdes was seen eleven more times by Dr. Shah and, despite extensive treatment, Dr. Shah noted no broken root tips or tooth fragments in Valdes' gums.  McGraw Aff. ¶ 36.  While Valdes states that Dr. Shah diagnosed him with a broken molar in the upper left quadrant of his mouth, the dental records indicate otherwise, specifically stating that there was no evidence of bone fragments in his gums.  Id. ¶ 37; Valdes Dep. at 103.  On September 16, 2005, Dr. Shah recorded Valdes' emphatic claims that there were bone fragments in the upper right side of his mouth, to which Dr. Shah responded "that there [wa]s nothing under [the] gum and the bone [wa]s normal," and Valdes did not require any treatment.  McGraw Aff. ¶ 37; see also Dkt. No. 59-5 at 59-5 at 8-9.

On January 15, 2008, Valdes was seen by Dr. Hussain but never told him about his broken molar or pain.  Valdes Dep. at 93.  Valdes was still experiencing pain but did not want Dr. Hussain to treat him for personal reasons.  Id. at 93-95.  Valdes was then examined by defendant Dr. Jacobsen on February 5, 2008 for complaints of pain in his upper left jaw.  McGraw Aff. ¶ 11; Dkt. No. 59-5 at 9; Valdes Dep. at 29-32, 35.  The location of the pain had shifted since Valdes last sought treatment with Dr. Shah from the upper right side of his mouth to the left.[3]  McGraw Aff. ¶ 39.  Dr. Jacobsen found no evidence of any bone, root tip or tooth fragment in the upper left quadrant of [his] mouth."

---

needs . . . . " Parrino Aff. ¶ 6.

[3] The amended complaint only alleges deliberate indifference for the molar fragment or imbedded root tip located on the upper left side of his mouth.

4

McGraw Aff. ¶ 11; see also Dkt. No. 59-5 at 9; Valdes Dep. at 35.  Valdes disputes whether an examination occurred.  Valdes Dep. at 35, 107.  X-rays confirmed that there were no bone or root tip fragments in Valdes' gums.  McGraw Aff. ¶ 11;  Valdes Second Dep. (Dkt. No. 59-18) at 15.[4]

Defendant Dr. McGraw examined Valdes two weeks later, on February 21, 2008, when Valdes again complained of pain and discomfort in his upper left jaw .  McGraw Aff. ¶ 10; Dkt. No. 59-5 at 9, 11; Valdes Dep. at 51-52.  Upon examination, McGraw discovered the tooth about which Valdes was complaining had previously been extracted.  McGraw Aff. ¶ 10.  Dr. McGraw examined Valdes, reviewed the x-ray taken by Dr. Jacobsen, and agreed that there was no evidence of a broken tooth or root tip in his gums.  McGraw Aff. ¶ 12; Valdes Dep. at 52.  Valdes disagreed with the findings and requested another x-ray be taken.  McGraw Aff. ¶ 13.  Dr. McGraw denied the request as it was not medically necessary given the films taken two weeks previously by Dr. Jacobsen.  Id. ¶ 13; Dkt. No. 59-5 at 11; Valdes Dep. at 52-54.

Valdes returned to Dr. McGraw on March 6, 2008 with identical complaints.  McGraw Aff. ¶ 14; Dkt. No. 59-5 at 11; Valdes Dep. at 61-62.  Dr. McGraw refused to order another x-ray because it was medically unnecessary for the same reasons previously cited. McGraw Aff. ¶ 14; Dkt. No. 59-5 at 11.  Valdes claimed that other dentists at other facilities had informed him that he had a broken root tip embedded in his gums in his upper left jaw. McGraw Aff. ¶ 15.  Dr. McGraw reviewed Valdes' dental records and found no such

---

[4] Valdes contends that Dr. Jacobsen asked Parrino to conduct the x-ray and, when she refused, Dr. Jacobsen performed it himself in an ineffective and unprofessional manner.  Valdes Dep. at 31-33, 107-109; Valdes Second Dep. at 7, 14-15, 17.

5

diagnosis. Id. ¶ 15.⁵  However, Dr. McGraw did find, and offered to treat, the impacted root tip on Valdes' lower right quadrant previously diagnosed by Dr. Justino, but Valdes refused. Id. ¶¶ 15-16.  According to Valdes, Dr. McGraw first stated that Valdes required treatment on the bottom right side of his mouth and then changed his recommendation to the upper right side.  Valdes Dep. at 62-63.  Valdes contends that Dr. McGraw never checked the left side of his mouth, essentially ignoring his continued complaints of pain from his upper left side of his mouth.  Valdes Dep. at 63-65.

Valdes returned to the dental clinic on September 15, 2008, complaining of gum pain in the upper left quadrant of his mouth.  McGraw Aff. ¶ 17; Dkt. No. 59-5 at 13.  Dr. McGraw examined the area, found food debris and slight swelling in the gum area, removed the food debris, and ordered new x-rays of the upper left quadrant.  McGraw Aff. ¶ 17; Dkt. No. 59-5 at 13; Valdes Dep. at 65-67, 71-72.  Dr. McGraw saw "no evidence of infection or puss" and the x-rays "again revealed no root tip or fragment in the gums."  McGraw Aff. ¶ 17; see also Dkt. No. 59-5 at 13.  Dr. McGraw diagnosed Valdes with inflammation of the gums as a result of poor oral hygiene, gave Valdes ibuprofen and an oral cleaning solution, and instructed him to improve his oral hygiene habits.  McGraw Aff. ¶ 17; Valdes Dep. at 72-73. Valdes again asserts that the x-rays were inaccurate because they was not of the entire area affected.  Valdes Dep. at 67-70.

On September 23, 2008, Valdes returned to the clinic again, still complaining of pain in the upper left portion of his mouth.  McGraw Aff. ¶ 18; Dkt. No. 59-5 at 13; Valdes Dep. at 73-74.  Dr. McGraw again removed food debris from the area.  McGraw Aff. ¶ 18; Dkt. No.

---

⁵During Valdes' testimony he also could not identify any of the dentists that had allegedly given him the diagnosis.  Valdes Dep. at 99-103.

59-5 at 13; Valdes Dep. at 74.  Dr. McGraw made no observations of a root tip embedded in his gums or infection or puss in the area.  McGraw Aff. ¶ 18; Dkt. No. 59-5 at 13. Valdes claims that his mouth was bleeding.  Valdes Dep. at 75.   Valdes was given ibuprofen for pain and encouraged to floss regularly and return if he had any further problems within the next few weeks.  McGraw Aff. ¶ 18; Dkt. No. 59-5 at 13.

On October 20, 2008, Valdes was referred to the dental clinic by the medical unit for pain in the upper left quadrant of his face.   McGraw Aff. ¶ 19; Dkt. No. 59-5 at 13, 17; Valdes Dep. at 76.  Valdes arrived at the dental clinic, but refused treatment.   McGraw Aff. ¶ 19; Dkt. No. 59-5 at 13; Dkt. No. 59-6; Valdes Dep. at 76.  Valdes requested pain medication for his mouth, but was sent for dental treatment against his wishes because the nurse observed that Valdes' mouth was swollen.  Valdes Dep. at 76-77.  Valdes refused to have Dr. McGraw check his mouth and unsuccessfully requested another specialty referral. Id. at 77.  On October 28, 2008, Valdes again returned to the clinic with identical complaints of pain.  McGraw Aff. ¶ 20; Dkt. No. 59-5 at 15.  Dr. McGraw "again removed a significant amount of food debris from that area of his mouth, and . . . noted no swelling, pain on palpation or thermal change in the gum region [or] . . . infection or puss."  McGraw Aff. ¶ 20. Another x-ray was ordered "which again revealed no root tip, tooth or molar fragment." Id. ¶ 20; see also Valdes Dep. at 86.  Valdes was again given oral hygiene solution, ibuprofen, and was encouraged to clean his mouth thoroughly after eating.  McGraw Aff. ¶ 20; Valdes Dep. at 80-81.

Valdes has not made any further complaints to the dental clinic since October 28, 2008. McGraw Aff. ¶ 21.  Additionally, Valdes failed to attend routine scheduled cleaning appointments on December 18, 2008, and April 3 and May 4, 2009.  McGraw Aff. ¶ 22.

Valdes refused the appointment on December 18 because he did not want to be seen by Dr. McGraw.  McGraw Aff. ¶ 23; Dkt. No. 59-5 at 15; Dkt. No. 59-7.  On April 3, Valdes stated that he had a prior commitment which prevented him from attending the routine appointment.  McGraw Aff. ¶ 24; Dkt. No. 59-5 at 15; Dkt. No. 59-8.  On May 4, Valdes refused to attend the appointment because he said he never requested it.  McGraw Aff. ¶ 25; Dkt. No. 59-5 at 15; Dkt. No. 59-9.   This action followed.

### B. Grievances

On February 11, 2008, Valdes filed a grievance stating that he had "a broken molar remnant causing [him] a great deal of pain."  Valdes Dep. at 91, 95-97.  Despite his constant complaints, Valdes contends that Parrino was precluding dentists "from giving [him] any treatment and [confirming] . . . th[at his] molar is infected."  Id. at 91.  Valdes testified that during this time he had been placed on penicillin for an oral infection.  Id. at 97-98.  Valdes also stated that despite the fact the penicillin was given for an oral infection, medical records were falsified, indicating that he was suffering from an ear infection.  Id. at 98.  The grievance and the subsequent appeals were all denied.  Id. at 110-11.

On March 10, 2008, Valdes filed a grievance regarding the refusal of the dental staff to refer him to a specialist and provide him with an x-ray.  Dkt. No. 59-16 at 3, 5-6; Valdes Dep. at 111-12.  An investigation into his dental records again revealed that there was no medical evidence to support his requests.  Dkt. No. 59-16 at 8; Valdes Dep. at 112-13.  Valdes' grievance was ultimately denied, as were the subsequent appeals.  Dkt. No. 59-16 at 1, 3-4, 7; Valdes Dep. at 112-13.

On March 28, 2008, Valdes filed a grievance stating that he was being improperly

8

treated by dental staff because they refused to refer him to a specialist and continually ignored his complaints. Dkt. No. 59-15 at 3, 5-6; Valdes Dep. at 113-18. An investigation revealed that there was no medical evidence of a root remnant or bone fragment located in the upper left quadrant of Valdes' mouth. Dkt. No. 59-15 at 8; Valdes Dep. at 115. The grievance was denied, as were the subsequent appeals. Dkt. No. 59-15 at 1, 3-4; Valdes Dep. at 115-16.

On July 14, 2008, Valdes filed a grievance alleging that an x-ray was missing from his dental files which would substantiate his claims that he had a bone fragment or root tip in the upper left quadrant of his mouth. Dkt. No. 59-14 at 4-5, 7-8; see also Valdes Dep. at 59-60, 118-22. An investigation revealed that all x-rays which had been taken had been accounted for and Valdes' grievance was dismissed. Dkt. No. 59-14 at 4-6, 9-10; Valdes Dep. at 119. Valdes appealed, but the decision was affirmed. Dkt. No. 59-14 at 1.

## II. Discussion

Valdes alleges that defendants were deliberately indifferent to his serious dental needs. Defendants contend that there is no merit to Valdes' Eighth Amendment claims and that the supervisory officials named were not personally involved in the alleged constitutional violations.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is

9

entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

Valdes has included defendants DOCS Commissioner Fischer, Superintendent Brown, Linquist, and D'Silva in this litigation because of their supervisory positions.  However, such contentions are meritless because a position in a hierarchical chain of command, without more, is insufficient to establish personal involvement.  Wright, 21 F.3d at 501.  Valdes also alleges that because he participated in the grievance system, these defendants were fully

11

apprised of his alleged battles to receive adequate dental treatment.  Valdes fails to allege that he ever personally communicated or corresponded with these individuals, or that they were actually involved in his grievance proceedings.  Accordingly, these contentions are also insufficient to establish personal involvement.  See Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citations omitted) (finding personal involvement only where a supervisory official received, reviewed, and responded to a prisoner's complaint); Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability.") (citations omitted).

   Valdes also asserts that these defendants improperly conducted, or refused to grant him, investigations into the matters for which he filed complaints.  Such contentions are belied by the grievances which indicate that investigations occurred in each circumstance.  However, even if the investigations did not occur, Valdes has no constitutional right to an investigation and, therefore, such contentions cannot serve as the basis for § 1983 relief.  See Carrasquillo v. City of New York., 324 F.Supp.2d 428, 438 (S.D.N .Y. 2004) (holding that prisoners have "no constitutional or federal right to an investigation into ... [an] accident, or to have his requests for an investigation answered"). Additionally, the record fails to support any contentions that defendants were involved with training the individuals involved in these alleged constitutional violations or grossly negligent in performing their employment duties.  Accordingly, defendants' motion should be granted on this ground as to these defendants.

12

## C. Eighth Amendment[6]

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d

---

[6] Valdes' response to defendants' motion was essentially a request for additional time to secure expert witnesses and testimony in support of his claims. Dkt. No. 60. Such requests were previously denied by the undersigned. Dkt. No. 60 ¶ 2. Moreover, any renewed requests are untimely because the discovery period has expired. Thus, to the extent Valdes requests additional time, such requests are again denied.

158, 162-63 (2d Cir. 2003) (citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

In this case, Valdes has failed to establish a serious medical need. Other federal courts have determined that an "impacted . . . tooth was an objectively serious dental need." Mosby v. Cavey, 686 F. Supp. 2d 868, 875 (W.D.Wis. 2010). It stands to reason that an impacted root tip for which surgical intervention was recommended would similarly qualify as a serious medical need. However, Valdes' complaints of where his impacted root tip was are contrary to where the dental records indicate the impaction is located. Valdes complains of persistent pain in the upper left quadrant of his jaw specifically as the result of

14

a bone or root tip fragment embedded in his gums.⁷  See generally Am. Compl. ¶ 14.

Dental records indicate that multiple different dentists at different facilities have examined and taken x-rays of the area and found no evidence of such a condition on either the upper right or left quadrants of his mouth.  McGraw Aff. ¶¶ 11-12, 18, 29, 31, 33, 35-36, 40-41; Dkt. No. 59-5 at 7, 9, 13; Valdes Second Dep. at 15.  Thus, except for Baldes' self-serving assertions to the contrary, the record stands unrefuted that Valdes has not suffered the medical condition he asserts.

Valdes attempts to contradict this objective evidence with conclusory statements that three unnamed and unidentified dentists at other facilities, and Dr. Shah, all agreed that the fragments were located in the upper left portion of his mouth.  McGraw Aff. ¶ 15.  Such claims are conclusory and, at least with respect to Dr. Shah, belied by the medical records in which he stated that Valdes' emphatic claims are meritless and there was no medical evidence to support Valdes' contentions of a foreign body in his gums.  McGraw Aff. ¶ 37; Dkt. No. 59-5 at 8-9.  Accordingly, there is no genuine issue of material fact regarding where the impacted root tip is located.⁸  See Khezrie v. Greenberg, 53 F. App'x 592, 593 (2d Cir.2002) (finding that "a party's self-serving and conclusory testimony to the contrary that is unsupported by the evidence is insufficient to raise an issue of fact to defeat summary judgment.") (internal quotation marks and citations omitted); see also Johnson v.

---

⁷ Valdes initially indicated that the persistent pain and embedded bone or root tip fragment was located on the upper right quadrant of his mouth.  McGraw Aff. ¶ 39.

⁸ To the extent that a serious medical condition exists, it has been identified by multiple dentists as an impacted root tip on the lower right quadrant of Valdes' mouth. McGraw Aff. ¶¶ 15, 32, 34; Dkt. No. 59-5 at 5, 7.  This condition led to the recommendation for surgical intervention, a recommendation which Valdes refused to pursue.  McGraw Aff. ¶¶ 15-16.

15

St. Clare's Hosp. & Health Center, No. , 1997 WL 113795, at *1 (S.D.N.Y. Mar. 12, 1997) (collecting cases and holding that no issue of fact precluding summary judgment is raised in the absence of expert medical testimony where the objective medical evidence is refuted only by plaintiff's self-serving claims). Valdes thus has failed to satisfy the first prong of the Eighth Amendment analysis.

Even if the unsubstantiated pain which Valdes is asserting is construed as a serious medical condition, Valdes has failed to prove deliberate indifference by the defendant dentists. The gravamen of Valdes' complaint is that he continually disagreed with the dental defendants' diagnosis of, and recommended treatment for, the alleged pain in the upper left quadrant of his mouth. Valdes contends that he required specialty services for his dental work. However, multiple dentists performed multiple oral exams and found no evidence of a bone or root tip fragment in Valdes' left upper quadrant. Such conclusions are further supported by at least three x-rays which indicate that there was no foreign body present in his upper left mouth. Any complaints Valdes had about the whether he should be referred to a specialist or receive additional x-rays of his mouth constitute no more than a disagreement in his treatment. Such disagreements, without more, are insufficient to state an Eighth Amendment violation. Sonds, 151 F. Supp. 2d at 312.

Valdes was not entitled to the dental care he desired but with adequate dental care. Chance, 143 F.3d at 703. The record does not support a conclusion that defendant dentists provided Valdes with anything but adequate dental care. Valdes' dental records indicate that he was seen by dental staff on several occasions. This belies any claims of deliberate indifference or a denial of treatment.

Moreover, dental defendants continually provided Valdes with x-rays and other

16

diagnostic services to determine the cause of his oral pain. Such examinations revealed an impacted root tip on the lower right side of his mouth and also collections of food debris in his gums which caused minor bleeding and irritation. The discovery of the root tip on the lower right quadrant resulted in a recommendation for surgical intervention, which Valdes voluntarily declined. McGraw Aff. ¶¶ 15-16, 32; Valdes Dep. at 44-45. Such actions are solely attributable to Valdes' decisions and cannot be classified as indifference or delay on the part of any of the dental defendants. When Valdes presented with pain due to the food debris, his mouth was cleaned, pain relievers were provided, and he was instructed on how to prevent the problem from continuing to occur. McGraw Aff. ¶ 17; Dkt. No. 59-5 at 13; Valdes Dep. at 65-67, 71-73. Valdes appeared with continuing complaints of pain, and diagnoses of food debris lodged in his teeth and causing irritation, which were cleaned and treated by Dr. McGraw on two additional occasions. McGraw Aff. ¶¶ 18, 20; Dkt. No. 59-5 at 13, 15; Valdes Dep. at 73-74, 80-81, 86. These actions contradict claims of deliberate indifference or delay. Additionally, Valdes was continually scheduled for routine cleanings and visits, which were also evidence of the adequate treatment which he received.

Accordingly, Valdes has failed to satisfy either prong of the Eighth Amendment analysis and defendants' motion should be granted on this ground.

### D. Injunctive Relief

Valdes seeks injunctive relief to be provided with specialty dental care. For injunctive relief to be granted, the Second Circuit requires a party to show "(1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case . . . and a balance

of hardships tipping decidedly in its favor." Lebron v. Armstrong, 289 F. Supp. 2d 56, 59 (D. Conn. 2003) (citations omitted). In this case, even construing the facts in the light most favorable to Valdes, he has failed to demonstrate irreparable harm or a likelihood of success or serious question on the merits. As discussed above, Valdes had been receiving routine, adequate dental care and thus is not in danger of suffering any harm. Additionally, even construing the facts in his favor, there is still no material question of fact with regards to the treatment he received or his unsuccessful attempts to prove an Eighth Amendment violation.

Accordingly, defendants' motion should be granted on this ground.

### E. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights . . . immunity might still be available as a bar to . . . suit if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir.1991) (citations omitted).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there

is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Valdes' allegations as true, he has not shown that any of these defendants violated his constitutional rights.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 59) be **GRANTED** as to all claims and all defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 7, 2010
       Albany, New York

_____
David R. Homer
U.S. Magistrate Judge